**THERMOLIZED COAL CORPORATION et al. v. COE, Com'r of Patents.**

**No. 6261.**

United States Court of Appeals for the District of Columbia.

Argued April 3, 1935.

Decided May 13, 1935.

Harvey L. Lechner, of Philadelphia, Pa., for appellants.

T. A. Hostetler and R. F. Whitehead, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

ROBB, Associate Justice.

Appeal from a decree in the Supreme Court of the District of Columbia dismissing appellants' bill, filed under section 4915, R. S., as amended (35 USCA § 63), seeking to authorize the issuance of a patent to appellant Buck.

The alleged invention covers a method of treating coal and the resulting product. The object of the process is to obtain a pulverized coal product free from occluded inflammable gases. All the claims (claims 50 to 53, inclusive, for a method; and 57 and 61 for the result of the method) were rejected. We reproduce 50 and 57 as illustrative:

"50. A method of preparing coal of the softer grades for its subsequent use which comprises crushing the coal to comparatively small pieces, and heating the coal, in the presence of inert gas sufficiently free from air to prevent combustion, until it has reached a temperature substantially throughout of from substantially above that of the boiling point of water to not above that at which thermal decomposition of the particular coal begins."

"57. As a new article of manufacture, pulverized coal of the softer grades freed from a substantial portion of its occluded inflammable gases and having its structure expanded to render it porous and charged with an inert gas such as flue gas."

In practicing the method, the coal is crushed into small pieces—a conventional step not involving novelty. It is then heated in the presence of inert or noncombustible gases. In the original specification, the maximum temperature to which the coal is heated was not stated in degrees, but it was stated that the coal is heated to the point of thermal decomposition.

In the Patent Office the Primary Examiner and the Board of Appeals both criticized the specification as too vague to satisfy the requirements of section 4888, R. S. (35 USCA § 33), that a patent specification shall be so clear "as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same." In the Buck specification it is stated that his process consists in crushing and heating coal or other carbonaceous material of a similar nature in the absence of air and in the presence of noncombustible gases "up to the temperature of the thermal decomposition and gasification of the substances of said materials." At what temperature thermal decomposition begins is not stated. By an amendment to the specification, the maximum temperature was stated to be 250° C.

The Bone patent, No. 1,594,994, August 3, 1926, discloses a "treatment of certain fuels to improve their calorific value." According to the Bone specification, "when brown coals and lignites, which have been completely freed from mechanically held water by drying them at temperatures below 110° C., are heated to higher temperatures which are below that at which destructive distillation begins, they undergo a chemical change that begins to be important at temperatures between 250° C. and 400° C." Coal is heated to a temperature between 250 and 400° C. As to this reference, the Examiner said: "Attention is particularly called to the remarkable similarity of Bone to the applicant's process with the single exception that applicant has now set the temperature of operation to one just below that at which Bone operates." The Board stated that the process carried out in the Bone patent is strikingly similar to that of the application. "An inert gas is used [by Bone] for heating the coal and the coal is heated to such a high temperature that all the free water and the occluded inflammable gases are driven off. The product obtained would have high calorific value and would be expanded and porous and charged with inert gases. * * * The final product obtained in any case would be expected and would differ merely in the degree of volatiles retained. It would without doubt be obvious to anyone skilled in working with coal if he had the Bone patent before him that a product having more volatiles in it could be obtained if the temperature used be lowered below 250 degrees. We fail to find, therefore, that these claims define patentably over the Bone patent."

We agree with the Patent Office tribunals that the publications cited by applicant[1] do not sustain the contention that a definite point exists at which thermal decomposition of coal begins.

But assuming the sufficiency of the specification, we agree with the Patent Office that there is nothing novel in the process.

The article claims are for pulverized coal freed from a substantial portion of its occluded gases, which simply means that the coal, when heated in an inert gas, absorbs some of it during the cooling step in place of inflammable gases that have been driven out. The heated inert gas treatment disclosed by Bone would impart like qualities to the coal so treated.

It results that the decree should be, and therefore is, affirmed.

Affirmed.

---

[1] "Primary Decomposition of Coal," by King & Willgress; "New Views of the Combustion of the Volatile Matter in Coal," by Katz.